UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KALAMAZOO COUNTY CONVENTION  )
AND VISITORS BUREAU, INC.,  )
        Plaintiff,  )
          )  No. 1:17-cv-303
-v-          )
          )  Honorable Paul L. Maloney
SOUTHWEST MICHIGAN FIRST CORPORATION, )
        Defendant.  )
_____)

**OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Kalamazoo County Convention and Visitors Bureau, doing business as Discover Kalamazoo, seeks a preliminary injunction to prevent Defendant Southwest Michigan First from using certain "269" marks. (ECF No. 5.) Southwest Michigan First filed a response and the parties attended a hearing on the motion. The Court concludes the balance of the factors weigh against issuing a preliminary injunction and will deny the motion.

I.

Discover Kalamazoo is a nonprofit corporation promoting tourism in Southwest Michigan. (ECF No. 1 Compl. ¶ 2 PageID.3.) Southwest Michigan First is a nonprofit organization promoting economic development in Southwest Michigan. (*Id.* ¶ 3 PageID.3.) In 2010, Discover Kalamazoo began a marketing campaign using the numbers 269. (*Id.* ¶ 11 PageID.4.) 269 is the area code for five counties in Southwest Michigan (Berrien, Cass, St. Joesph, Van Buren, and Kalamazoo), and parts of five other counties (Allegan, Barry, Eaton, Calhoun, and Branch). Discover Kalamazoo possesses two federally registered service marks that use the numbers 269, and a third application is being considered. (*Id.* ¶

27 PageID.8–9.) Discover Kalamazoo also has two Michigan-registered marks that use the numbers 269. (*Id.* ¶ 30 PageID.9.)

Since 2016, Southwest Michigan First has used the numbers 269 as part of a marketing and promotions campaigns. (Compl. ¶¶ 48–52 PageID.11-12.) In June 2014, Southwest Michigan First registered the domain name "269mag.com." (*Id.* ¶ 53 PageID.12.) On December 18, 2015, Southwest Michigan First filed an application to federally register the mark "269 Magazine." (*Id.* ¶ 36 PageID.10.) In January 2016, Southwest Michigan First began publishing the 269 Magazine. (*Id.* ¶ 39 PageID.10.) In June 2016, content was posted on the 269mag.com website. (*Id.* ¶ 54 PageID.12.)

In its complaint, Discover Kalamazoo alleges trademark infringement under § 32(1) of the Lanham Act (Count 1); false designations of origin under § 43(a)(1)(A) of the Lanham Act (Count 2); common law trademark infringement, (Count 3); common law unfair competition (Count 4); trademark infringement under § 12 of the Michigan Trademarks and Service Marks Act (Count 5); a violation of the Federal Anticybersquatting Consumer Protection Act (Count 6); and deceptive trade practices in violation of the Michigan Consumer Protection Act (Count 7). In this motion, Discover Kalamazoo asserts each of its claims are likely to succeed on the merits and, therefore, each of its claims are sufficient to grant a preliminary injunction.

## II.

Preliminary injunctions are authorized by Rule 65 of the Federal Rules of Civil Procedure. A district court has discretion to grant or deny preliminary injunctions. *Planet Aid v. City of St. Johns, Michigan*, 782 F.3d 318, 323 (6th Cir. 2015). When deciding a

motion for a preliminary injunction, a court should consider and balance four factors: (1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief.  *Southern Glazer's Distribs. of Ohio v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017).  The four factors are not prerequisites that must be established at the outset, but are interconnected considerations that must be balanced together.  *Id.* The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits can be held.  *Id.* at 848 (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).  The United States Supreme Court has stated that a preliminary injunction is an "extraordinary and drastic remedy," *Munaf v. Geren*, 553 U.S. 674, 690 (2008) (citation omitted) that should "only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted).

## III.

Discover Kalamazoo has four registered 269-related trademarks.[1]   Discover Kalamazoo has two 269-related service marks registered with the United States Patent and

---

[1]     In this opinion, the word trademark is used generically to reference both trademarks and service marks.  Parties can register both service marks and trademarks.  Trademarks identify and distinguish the source and quality of a tangible product, while service marks identify and distinguish the source and quality of an intangible service.  *Savannah Coll. of Art and Design, Inc. v. Sportswear, Inc.*, 872 F.3d 1256, 1260–61 (11th Cir. 2017) (quoting 3 McCarthy on Trademarks § 19:81)). Generally, the analysis for an infringement claim is the same for both types of marks.  *See Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1054 (6th Cir. 1999); *see also* J. Thomas McCarthy, 4 McCarthy on Trademarks and Unfair Competition § 23:1 (5th ed. Westlaw) ("The test for

Trademark Office (USPTO).  The first mark is a phrase, "269 Cool Things To Do in Area Code 269."  (ECF No. 5-7 PageID.125.)  The service mark was registered on February 18, 2014, and states that it was first used in July 2010.  (*Id.*)  The second service mark is also a phrase, "Spirit of 269."[2]  (ECF No. 5-8 PageID.128.)  The second service mark also issued on February 18, and states that it was first used in January 2013.  (*Id.*)  Both documents contain a disclaimer: "no claim is made to the exclusive right to use '269', apart from the mark as shown."  (PageID.125; PageID.128.)  The USPTO did not approve either application until they were amended to include the disclaimer.  (ECF Nos. 13-4 PageID.374; ECF No. 13-5 PageID.376.)

Discover Kalamazoo sought to register a service mark for the stand-alone number combination 269.  On December 2, 2015, it filed an application with the USPTO for a mark on "269."  (ECF No. 5-9 PageID.131.)  In March 2016, USPTO rejected the application, concluding the mark was geographically descriptive.  (ECF No. 13-6 PageID.378.)  Then, on November 29, 2016, the USPTO published the application in the Trademark Official Gazette (TMOG).  (ECF No. 5-9 PageID.13.1)  The stated purpose for publication was to prompt any notices of opposition.  (*Id.*)  On January 25, 2017, Southwest Michigan First filed a notice of opposition with the Trademark Trial and Appeal Board (TTAB).  (ECF No. 5-2 Ayers Affidavit ¶ 28 PageID.78.)  In May 2017, Discover Kalamazoo requested the

---

infringement of a service mark is identical to the test of infringement of a trademark: is there a likelihood of confusion?").

[2] The Spirit of 269 is a list of breweries and distilleries in Southwest Michigan.

USPTO stay the proceeding pending the outcome of this lawsuit.  (ECF No. 14-3 PageID.492.)

Discover Kalamazoo has two 269-related marks registered with the State of Michigan. Discover Kalamazoo has a trademark for the number combination "269," for class 38, Prints and Publications.  (ECF No. 5-10 PageID.134.)  The document was issued on May 10, 2016, and states that the mark was first used in July 2010.  Discover Kalamazoo has a service mark for the number combination "269," for class 107, Services and Entertainment.  (ECF No. 5-11 PageID.136.)  The document was issued on May 10, 2016, and states that the mark was first used in July 2010.  (*Id.*)

Southwest Michigan First has filed an application for a 269-related mark.   On December 18, 2015, Southwest Michigan First filed a trademark application for "269 Magazine."  (ECF No. 5-14 PageID.147.)  Discover Kalamazoo sent USPTO a letter of protest.  (ECF No. 14-1 PageID.395.)  The USPTO suspended Southwest Michigan First's application until Discover Kalamazoo's application for the stand-alone 269 mark was resolved.  (ECF No. 14-1 PageID.385.)

## IV.

### A.  Infringement, False Designations of Origin, and Unfair Competition

#### 1.  Likelihood of Success

A number of Discover Kalamazoo's claims rely on the same legal tests.  Discover Kalamazoo's first claim is for infringement or a registered mark and is brought under the Lanham Act, 15 U.S.C. § 1114.  The second claim is for false designations of origin under

§ 1125(a) of the Lanham Act.[3]  Discover Kalamazoo's third claim is for infringement under Michigan's common law.[4]  The fifth claim is for infringement under Section 12 of Michigan's Trademarks and Service Marks Act.  For each of these claims, the Court must consider whether Discover Kalamazoo has a protectable mark and must also consider whether there would be a likelihood of confusion as the result of Southwest Michigan First's magazine.  *See, Innovation Ventures LLC v. N.V.E., Inc.*, 694 F.3d 723, 728 (6th Cir. 2012) (claims under 15 U.S.C. § 1125(a)); *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006) (claims under 15 U.S.C. § 1114)); *Janet Travis, Inc. v. Preka Holdings, LLC*, 856 N.W.2d 206, 270, 277–78 (Mich. Ct. App. 2014) (claims under Michigan common law and under the Michigan statute).

### a.  Presumptions and Burden of Proof

Ownership of a service mark is not acquired by federal or state registration, but from prior appropriation and actual use in the marketplace.  *Homeowners Group, Inc. v. Home*

---

[3]      This provision of the Lanham Act provides for a federal cause of action for infringement of marks that have not obtained federal registration.  *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760–61 (6th Cir. 2005).  Michigan common law also protects unregistered marks.  *See Smith v. Imus*, 24 N.W. 830, 837–38 (Mich. 1885); *see also* Mich. Comp. Laws § 429.44 ("Nothing contained in this act shall adversely affect the rights or enforcement of rights in marks acquired in good faith at any time in common law.").

[4]      In the complaint, Discover Kalamazoo states that Defendant's conduct gives rise to an infringement claim under the common law of both the United States and Michigan.  (Compl. ¶ 74 PageID.15.)  No such federal claim exists.  Generally, there is no federal common law.  *See Erie R.R. Co. v. Thompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the state . . . . There is no federal general common law.").  And, there is no federal common law on which to base trademark infringement claims.  *Toho Co., Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 791 (9th Cir. 1981).  Before the Lanham Act passed in 1946, common law suits to enjoin trademark infringements had to be brought under local law.  *See Grocers Baking Co. v. Sigler*, 132 F.2d 498, 501 (6th Cir. 1942); *see, e.g., Pecheur Lozenge Co. v. Nat'l Candy Co.*, 315 U.S. 666, 667 (1942) ("The only cause of action that this record could possible support is for unfair competition and common law 'trademark infringement', to which local law applies.").

*Mktg. Specialists, Inc.*, 931 F.2d 1100, 1105 (6th Cir. 1991).  But, registration of the service mark affects the assignment of the burden of proof in a dispute about the use of a mark. Under federal law, registration of a trademark "creates a rebuttable presumption" that the mark is valid as either inherently distinct or descriptive with secondary meaning.  *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 513 (6th Cir. 2007).  Registration of a mark creates a presumption that the mark is valid and the challenger must put forth some evidence to rebut the presumption.  *Ashland Oil, Inc. v. Olymco, Inc.*, 64 F.3d 662 (6th Cir. 1995) (unpublished table opinion) (citing *Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 597 (6th Cir. 1989) (Krupansky, J. concurring and citing cases)); *Fuji Kogyo Co. Ltd. v. Pacific Bay Int'l, Inc.*, 461 F.3d 675, 683 (6th Cir. 2006) ("Registration of a trademark gives rise to a rebuttable presumption that the trademark is valid."). Registration of the mark does not shift the ultimate burden of proof of the validity of the mark, which always remains on the registrant.  *Ashland Oil*, 64 F.3d 662.  For unregistered marks, the burden of proof falls on the plaintiff to prove the validity and ownership of the mark.  *Frosty Treats, Inc. v. Sony Computer Entm't America, Inc.*, 426 F.3d 1001, 1003 (8th Cir. 2005); *Emergency One, Inc. v. American Fire Eagle Engine Co., Inc.*, 332 F.3d 264, 272 (4th Cir. 2003).

Michigan law employs the same standards.  When a party brings a claim under the Michigan statute and the mark is registered in Michigan, the registration is prima facie evidence that the mark is valid and the burden of production to demonstrate the mark is not valid falls on the alleged infringer.  *Janet Travis*, 856 N.W.2d at 217 ("As noted earlier, if the mark is registered with the state, the registration is prima facie evidence that the plaintiff's

mark is valid, and the burden of production shifts to the defendant to demonstrate that the mark is not valid.")

One federal court implicitly found that a state-registered mark does not create a presumption of validity for the purpose of a federal trademark infringement claim.  *E.g.*, *Urgent Care, Inc. v. South Mississippi Urgent Care, Inc.*, 289 F. App'x 741 (5th Cir. 2008). The plaintiff possessed a state mark for the phrase "urgent care" and also possessed federal and state marks for the phrase "urgicare."  Plaintiff sued when another company began using the phrase "urgent care."  The suit was filed in state court and alleged both state and federal claims.  Defendant removed the lawsuit and the district court issued a preliminary injunction. On appeal, the Fifth Circuit reversed.  For the phrase "urgent care," the Fifth Circuit began by pointing out the phrase was not a federally registered mark and, therefore the plaintiff below had the burden to prove the mark was not generic.  *Id.* at 744.  Because the plaintiff did not meet its burden, the district court erred.  The "urgicare" mark was presumed valid, but the plaintiff below failed to prove a likelihood of confusion with the phrase "urgent care." *Id.*

### b.  Protectable Marks

Only "distinctive" marks may be afforded trademark protection.  *Leelanau Wine Cellars*, 502 F.3d at 512.  The strength or weakness of a mark falls on a spectrum of distinctiveness, ranging from generic terms to fanciful or arbitrary terms.  *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1116–17 (6th Cir. 1996). "Generic" marks typically do not qualify for trademark protection.  *Id.* at 513.  "Descriptive" marks, next on the spectrum of marks, may be afforded trademark protection when the

descriptive mark acquires secondary meaning.  *Id.* at 1117.  The burden to demonstrate secondary meaning is "substantial."  *Burke-Parsons-Bowlby Corp.*, 871 F.2d at 596 (citing *Bank of Texas v. Commerce Southwest, Inc.*, 741 F.2d 785, 787 (5th Cir. 1984)).  "A descriptive mark achieves secondary meaning when 'in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather that the product.'"  *Leelanau Wine Cellars*, 502 F.3d at 513 (quoting *Inwood Labs. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982)).  Suggestive marks, stronger marks than descriptive ones, "suggest rather than describe an ingredient or characteristic of the goods" and requires the consumer to "use imagination and perception to determine the nature of the goods."  *Champions Golf Club*, 78 F.3d at 1117.  Suggestive terms do not require proof of secondary meaning.  *Id.*

When a mark "'imparts information directly, it is descriptive.'"  *Burke-Parsons-Bowlby Corp.*, 871 F.2d at 594.  A mark is considered geographically descriptive when the mark is perceived by the public as describing the origin of the goods.  *Id.* at 594.  To be protectable, a mark that is geographically descriptive must have acquired secondary meaning.  *Id.* at 595.  A geographically descriptive mark obtains secondary meaning "which no longer cause the public to associate the goods with a particular place but to associate the goods with a particular source."  *Id.* (citing *American Footwear Corp. v. Gen. Footwear Co., Ltd.*, 609 F.2d 655 (2d Cir. 1979).  In other words, the descriptive term "no longer primarily denotes the geographic area" and instead it "primarily denotes a single source for the product."  *Id.*

A party seeking to establish that its mark has obtained secondary meaning must show, by a preponderance of the evidence, that "the attitude of the consuming public toward the

mark 'denotes a single thing coming from a single source.'" *Burke-Parsons-Bowlby Corp.*, 871 F.2d at 596 (quoting *Aloe Cream Labs. v. Milsan, Inc.*, 423 F.2d 845, 849 (5th Cir. 1970)).  Absent direct evidence, which is difficult to obtain, a courts must draw reasonable inferences from evidence of long-term usage and expenses and efforts put toward developing a reputation and good will for the mark.  *Id.*  The Sixth Circuit has identified seven factors that a court should consider when determining whether a mark as acquired secondary meaning: (1) direct consumer testimony; (2) consumer surveys; (3) exclusivity, length, and manner of use; (4) amount and manner of advertising; (5) amount of sales and number of customers; (6) established place in the market; and (7) proof of intentional copying.  *See DeGidio v. West Group Corp.*, 355 F.3d 506, 513 (6th Cir. 2004).

Because Discover Kalamazoo has registered 269 as a service mark with the State of Michigan, that mark is entitled to a presumption of validity for its state law infringement claim.  Southwest Michigan First bears the burden of showing that the 296 mark is not valid. Southwest Michigan First raises a number of arguments about the nature of the mark, has presented evidence about the use of the number combination that undermines the validity of the mark, and also has identified problems with the evidence Discover Kalamazoo has presented to show secondary meaning.

The Court has concerns about the validity of the state-registered 269 stand-alone service mark.[5]  Based on the evidence in the record, Southwest Michigan First has demonstrated that questions exists about whether the public associates the number

---

[5]      Generally, Discover Kalamazoo asserts its rights to the "269 marks," without distinguishing between the different marks.

combination 269 with Discover Kalamazoo's advertising campaign, instead of the geographic area in general.  Southwest Michigan First observes, correctly, that there is no evidence in the record that Discover Kalamazoo has used 269 as a stand-alone mark as part of a marketing or advertising campaign.  In addition, the evidence submitted by Southwest Michigan First establishes that a number of third parties use the number 269 to promote goods and services.  The businesses using 269 as part of the company's name include 269 Design LLC, 269 Holdings LLC, 269 Realty, LLC, 269 Rentals, LLC, 269 Lofts and 269 Motorsports LLC.  (ECF No. 14-4 PageID.528.)  At this preliminary stage of the litigation, the evidence is sufficient to call into question the distinctiveness of the mark.  *But see, Daddy's Junky Music Stores*, 109 F.3d at 281–82 (considering third party uses of similar marks for a summary judgment motion).

Furthermore, 269 is a geographically descriptive mark.  The number combination is a telephone area code.  The number combination imparts information directly, by identifying the area being promoted.  The number combination is not suggestive or arbitrary, as Discover Kalamazoo argues.  Discover Kalamazoo uses the 269 mark to promote goods and services in the 269 area code.  The nature of the marketing campaign makes it inherently difficult for the public to disassociate the number with area; indeed, the intended message of the campaign is the opposite.  For example, Discover Kalamazoo has pictures of the number 269 on a train that is part of a museum and in front of a movie theater.  (ECF No. 5 PageID.44–45.)  Discover Kalamazoo does not sell trains, museum tickets or movie tickets. To the extent the campaign is successful at promoting tourism, the public associates the mark

with the geographic region, not with the services identified in the pictures or with Discover Kalamazoo.

Because this evidence and these arguments are sufficient to overcome the presumption afforded the state registrations, the 269 stand-alone mark must have acquired some secondary meaning to be valid.  Discover Kalamazoo has offered some evidence about its use of 269.  It has used been using the numbers as part of its promotional campaign for about seven years.  (ECF No. 5-2 Ayers Dec. ¶ 8 PageID.73.)  It has spent more than $140,000 in advertising that uses those numbers and the campaigns have appeared in various print and on-line materials.  (*Id.* ¶ 11 PageID.73.)  But, Discover Kalamazoo has not submitted consumer testimony or consumer surveys.  Discover Kalamazoo has evidence about the number of people visiting their social media sites.  (Ayers Dec. ¶ 15 PageID.74.)  And, while the mark may appear throughout those websites, the evidence is hardly dispositive that the mark has become distinctive in the mind of the general public.  Discover Kalamazoo contends that the USPTO has already found the 269 mark distinctive when it published the 269 mark in the Official Gazette (ECF No. 5-9 PageID.131).  (ECF No. 5 Brief at 16 PageID.56.)  This argument is not persuasive.  In this circuit, preliminary determinations made by an examining attorney at the USPTO are entitled to little weight when the examining attorney does not consider the same evidence that is presented to the court.  *Progressive Distrib. Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 426–27 (6th Cir. 2017).  As stated at the top of the Gazette page, the purpose of the publication was to determine if opposition to registration of the mark existed.  (ECF No. 5-9 PageID.131.)

c.  Likelihood of Confusion

Discover Kalamazoo must show that the competing marks will create confusion among consumers about the origin of the goods and services offered.  *Progressive Distrib. Servs., Inc.*, 856 F.3d at 424.  For trademark infringement claims, courts consider eight factors when determining whether a likelihood of confusion exists: (1) strength of the senior mark, (2) relatedness of the goods or services, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) likely degree of purchaser care, (7) the intent of the defendant in selecting the mark, and (8) likelihood of expansion of the product lines.  *Leelanau Wine Cellars*, 502 F.3d at 515.  Not every factor will be relevant in each case.  *Id.*  The "ultimate question" in each situation is "whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way."  *Id.* (quoting *Homeowners Group*, 931 F.2d at 1107)

The likelihood of confusion factors for a § 1114 infringement claim are the same factors a court would use to resolve a false designation of origin claim, as well as claims brought under Michigan's trademark and consumer protection act and Michigan's common law.  *See Leelanau Wine Cellars*, 502 F.3d at 521; *Homeowners Group*, 931 F.2d at 1104–05; *Empire Nat'l Bank of Traverse City v. Empire of America FSA*, 559 F. Supp. 650, 653–54 (W.D. Mich. 1983).

The Court has concerns about the likelihood of confusion element of Discover Kalamazoo's infringement claims.  First, for the reasons discussed above, the 269 stand-alone marks are not strong.  The marks are geographically descriptive and there are questions about whether the marks have obtained secondary meaning.  Second, the services provided

13

by Discover Kalamazoo and by Southwest Michigan First are complementary, not competitive. Businesses in the area would find reasons to advertise with both groups because the the two groups target different audiences. *See Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3de 623, 63 (6th Cir. 2002) ("TSI and Thermoscan offer goods and services that utilize similar technology in very different ways. Moreover, because they market their goods and services to different segments of the population, TSI and Thermoscan do not compete in the marketplace.") Discover Kalamazoo promotes tourism in the area. Southwest Michigan First promotes the area for business growth and development. Although companies considering Southwest Michigan for expansion might be interested in the information offered by Discover Kalamazoo, potential tourists would have little interest in the business focused articles published in 269 Magazine. And, when the services offered by two companies are somewhat related, but not competitive, the likelihood of confusion will turn of other factors. *Daddy's Junky Music Stores,* 109 F.3d at 282.

Third, Discover Michigan has provided no evidence of actual confusion. Discover Michigan argues that the USPTO suspended Southwest Michigan First's attempt to protect 269 Magazine because of the potential for confusion.[6] (ECF No. 16-6 PageID.565.) This is not evidence of actual confusion by a consumer. As explained above, preliminary determinations at the USPTO by an examining attorney are not entitled to deference.

---

[6] Discover Kalamazoo filed the Letter of Protest Memorandum, which informed the examining attorney that a letter of protest had been filed. Southwest Michigan First has submitted the letter issued by the examining attorney which suspended Southwest Michigan First's application to register 269 Magazine. (ECF No. 14-1 PageID.387.) The application was suspended because Discover Kalamazoo's application to register 269 was filed first. (*Id.*) The examining attorney concluded that if Discover Kalamazoo's application was approved, confusion with that mark could occur. (*Id.*)

Fourth, because the parties target different consumer markets, their use of similar marketing channels does not weigh in favor of finding that confusion will occur.  And, for the same reason, the fifth factor, degree of purchaser care, does not weigh in favor of finding a likelihood of confusion.  Certainly, both parties give away their publications.  And, while potential tourists might not exercise a high degree of care, business owners considering the area for expansion or relocation would exercise a high degree of care.

The Court acknowledges that some factors do weigh in favor of finding a likelihood of confusion.  Viewing the marks as they are used in the marketplace, consumers could be confused about the source of the marks based on their similarity.  *See Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1187 (6th Cir. 1988) (*Wynn I*).  Intent also weighs, albeit slightly, in favor of finding a likelihood of confusion.  Without dispute, Southwest Michigan First had knowledge of Discover Michigan's use of the number combination 269.  But, the record does not clearly establish that Southwest Michigan First understood that Discover Kalamazoo laid claim to the stand-alone mark before launching 269 Magazine.  Indeed, Discover Kalamazoo's federal marks explicitly disclaimed any right to the stand-alone mark.

### 2.  Irreparable Harm

The party seeking a preliminary injunction must show that an irreparable injury is likely in the absence of an injunction.  *Winter, 555* U.S. at 21.  The possibility of harm is not sufficient for a court to issue an injunction.  *Id.*  Ordinarily, a finding of a likelihood of confusion for trademarks provides a basis for finding irreparable harm.  *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991) (*Wynn II*).  When a plaintiff delays in applying for injunctive relief in a trademark case, any presumption that infringement

alone will cause irreparable harm before a trial can be held is neutralized and "such delay alone may justify denial of a preliminary injunction for trademark infringement." *Blockbuster Entm't Group, Div. of Viacom, Inc. v. Laylco, Inc.*, 869 F. Supp. 505, 516 (E.D. Mich. 1994) (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275–76 (2d Cir. 1985)); *accord Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("A delay in seeking a preliminary injunction of even only a few months--though not necessarily fatal--militates against a finding of irreparable harm.").

Discover Kalamazoo's delay in seeking a preliminary injunction undermines its assertion that without the injunction it will be irreparably harmed.  Southwest Michigan First approached Discover Kalamazoo in July 2015 about the plans to publish 269 Magazine. (ECF No. 13-2 Baker Dec. ¶9–11 PageID.332.)  Greg Ayers, with Discover Kalamazoo, even emailed support for the magazine, and remarked only that Discover Kalamazoo had a mark on the phrase 269 Cool Things to do in Area Code 269.  (ECF No. 13-2 PageID.341.) Southwest Michigan First spent several months preparing the magazine and, on September 8, 2015, sent Discover Kalamazoo the draft of an agreement "to ensure we are not stepping on your toes." (ECF No. 13-2 PageID.344.)  Southwest Michigan First followed up with an email on September 22, after not hearing from Discover Kalamazoo.  (ECF No. 13-2 PageID.346.)  Discover Kalamazoo had the agreement reviewed by an attorney, and any cooperation between the parties fell apart.  (ECF No. 13-2 PageID.352, 354, 357 and 364.) Meanwhile, Southwest Michigan First proceeded to publish 269 Magazine in January 2016. Southwest Michigan First reached out to Discover Kalamazoo in December 2016, to try to resolve the outstanding disputes.  (Baker Dec. ¶ 28–29 PageID.335.)  Discover Kalamazoo

then filed this lawsuit in April 2017, more than 15 months after the first issue of the magazine was published and more than 20 months after learning that Southwest Michigan First intended to publish the magazine.

This delay precludes Discover Kalamazoo from establishing irreparable harm.  More than a dozen editions of the magazine have been distributed.  Furthermore, the magazine exists on-line.  Even if this Court were to issue a preliminary injunction, the past issues could not be removed from circulation or from the internet.  In addition, Discover Kalamazoo has not distinguished the irreparable harm that will occur from future publications, the only ones this Court could enjoin, from the harm caused by the publications of the prior fifteen months.

### B.  Michigan Consumer Protection Act

In the seventh count in the complaint, Discover Kalamazoo alleges a violation of Michigan's Consumer Protection Act (MCPA).  Discover Kalamazoo argues that consumers will be misled and may believe that it has approved or sponsored Southwest Michigan' First's services because of the manner in which Southwest Michigan First uses 269 in its publications.  Michigan law prohibits "deceptive methods, acts, or practices in the conduct of trade or commerce" that have a "probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services."  Mich. Comp. Laws § 445.903(1)(a).  The MCPA uses the same likelihood of confusion standard as used in federal trademark law.  *Leelanau Wine Cellars*, 502 F.3d at 521; *Homeowners Group*, 931 F.2d at 1105 n.1.

Discover Kalamazoo's request for a preliminary injunction based on violations of the MCPA will be denied for the same reasons that a preliminary injunction for the infringement claims will be denied.  Discover Kalamazoo has not established a substantial likelihood of confusion by consumers about the source of the services.

### B.  Anticybersquatting Consumer Protection Act

In the sixth count in the complaint, Discover Kalamazoo alleges a violation of the Anticybersquatting Consumer Protection Act (ACPA).  Discover Kalamazoo argues that Southwest Michigan First's registration and use of 269mag.com was willful, in bad faith and with the intent to profit from Discover Kalamazoo's 269 marks.  For Discover Kalamazoo to establish a claim under the ACPA, it must show (1) the defendant registered or used a distinctive, famous or protected domain name, (2) which is identical to or confusingly similar to one of its marks, and (3) that the defendant acted with bad faith intent to profit from that mark.  15 U.S.C. § 1125(d)(1)(A); *Traton News, LLC v. Traton Corp.*, 528 F. App'x 525, 529 (6th Cir. 2013) (citation omitted).  The famous or distinctiveness test for the first element overlaps with the factors a court considers when determining whether a mark is protected for an infringement claim.  *See* 15 U.S.C. § 1125(c)(1); *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001).  The confusion test in the second element for ACPA claims is narrower and less comprehensive than the likelihood of confusion test in trademark law.  *Southern Co. v. Dauben, Inc.*, 324 F. App'x 309, 319 (5th Cir. 2009) (collecting cases).  For ACPA claims, courts compare the challenged domain name and the plaintiff's mark.  *Coca-Cola Co. v Purdy*, 382 F.3d 774, 783 (8th Cir. 2004).

Discover Kalamazoo's request for a preliminary injunction based on violations of the APCA will be denied.  Discover Kalamazoo has not demonstrated a likelihood of success for establishing that its 269 stand-alone marks are distinct or have acquired secondary meaning so that the marks are protectable.  The other 269 marks and 269magazine are not confusingly similar.  And, Discover Kalamazoo has not demonstrated any irreparable injury from the registered domain name.  Again, Southwest Michigan First had been using the domain name for months before Discover Kalamazoo filed this lawsuit.  Discover Kalamazoo has offered no evidence that the number of visitors to its website have fallen since the 269 Magazine website was launched.

## V.

The Court **DENIES** Discover Kalamazoo's motion for a preliminary injunction.  On this record, the Court is not convinced that Discover Kalamazoo has protectable or valid marks for 269 as a stand-alone mark, registered or unregistered.  On this record, the Court is also not convinced that consumers will be confused about the source of 269 Magazine.  To be clear, the Court has not concluded that Discover Kalamazoo could not ultimately prevail on it claims.  Even if the Court were to find a likelihood of success on the merits, Discover Kalamazoo's more than fifteen month delay at bring this lawsuit undermines its argument that it would suffer irreparable harm without an injunction.

<u>**ORDER**</u>

For the reasons provided in the accompanying Opinion, Discover Kalamazoo's motion for a preliminary injunction (ECF No. 5) is **DENIED.**

**IT IS SO ORDERED.**

Date:  <u>November 28, 2017</u>                              <u>/s/ Paul L. Maloney</u>
                                                     Paul L. Maloney
                                                     United States District Judge